## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MATT SIMPSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTERRA MOUNTAIN COMPANY and IKON PASS INC.,<br><br>Defendants. | Civil Action No.:  20-cv-01691<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Matt Simpson ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Alterra Mountain Company and Ikon Pass Inc. (collectively, "Defendants" or "Alterra") and respectfully alleges the following:

**INTRODUCTION**

1.      Alterra Mountain Company and its wholly-owned subsidiary Ikon Pass Inc. marketed and sold the Ikon Pass and Ikon Base Pass (collectively, the "Passes") for the 2019-20 season. Defendants promised that the Ikon Pass provided "unlimited access at 14 iconic destinations" and also provided up to 7 days each at another 26 "select global destinations" with "no blackout dates."[1]

---

[1] https://www.ikonpass.com/en/shop-passes/ikon-pass-2019-2020 (last accessed June 8, 2020).

2.     Alterra publicly announced on March 14, 2020, that due to the COVID-19 outbreak, as of March 15, 2020 all of its North American ski resorts would be closed until further notice.

3.     Alterra did not offer refunds to purchasers of the Passes based on their inability to use their Passes for the remainder of the 2019-20 ski season and have retained the Pass purchasers' payments.

4.     Plaintiff brings this class action suit on behalf of himself and all others similarly situated to seek redress for Defendants' refusal to refund fees after they closed all of their North American ski resorts, much earlier than the promised duration of the ski season. Alterra collected fees from skiers, snowboarders (also referred to herein as "riders"), and others, but then deprived them of the promised "unlimited" skiing and snowboarding.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (a) the proposed Class, defined below, consists of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Class are citizens of states different than Defendants' home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction over Defendants because Defendants'
principal places of business are within this District.

8.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants
maintain their principal place of business within the District and a substantial part of the
events giving rise to Plaintiff's claims occurred here.

## PARTIES

9.    Plaintiff Matt Simpson is a citizen of Colorado and resides in Glenwood
Springs, Colorado. Mr. Simpson purchased an Ikon Base Pass from Defendants for the
2019-20 season. Plaintiff Simpson was prevented from using the entire value of his Ikon
Base Pass as a result of the Alterra closure.

10.    Defendant Alterra Mountain Company is a Delaware corporation, with its
principal place of business in Denver, Colorado. Alterra Mountain Company, among other
things, owns and operates ski resorts in North America.

11.    Defendant Ikon Pass, Inc. is a Delaware corporation, with its principal place
of business in Denver, Colorado. Ikon Pass, Inc. is a wholly-owned subsidiary of Alterra
Mountain Company and it sells the Passes to customers such as Plaintiff and Class
Members.

## FACTUAL ALLEGATIONS

12.    Defendant Alterra owns and operates 15 North American ski resorts,
including destinations such as Squaw Valley, Alpine Meadows and Mammoth Mountain

in California, Steamboat and Winter Park Resort in Colorado, Deer Valley Resort in Utah, and several others.

13.     Defendants sell daily lift tickets, and also marketed and sold two types of passes for the 2019-20 season—the Ikon Pass and the Ikon Base Pass. The Passes grant the purchasers varying degrees of access to not only the 15 ski resorts owned and operated by Alterra, but also several others in North America and beyond.

14.     According to Alterra, "The Ikon Pass unlocks adventure with access to 38 iconic winter destinations across the Americas, Japan, Australia and New Zealand and is a collaboration of industry leaders - Alterra Mountain Company, Aspen Skiing Company, Boyne Resorts, POWDR, Jackson Hole Mountain Resort, Alta Ski Area, Snowbird, SkiBig3, Revelstoke Mountain Resort, Sugarbush Resort, Thredbo, Niseko United, Valle Nevado, and NZ Ski. Each demonstrates integrity, character and independence that is reflected in their mountains and guests."[2]

15.     Alterra promised purchasers of the Ikon Pass "unlimited access" to 14 ski resorts, seven days of access each at another 16 ski resorts, and a combined seven days of access at seven other ski resorts, all "with no blackout dates." The Ikon Pass cost $949 for

---

[2] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release.html (last accessed June 8, 2020).

adults, $699 for young adults, $199 or $299 for children, and $49 for children aged 4 and under.[3]

16.     Similarly, Alterra represented to and promised purchasers of the Ikon Base Pass "unlimited/select access" to 12 ski resorts, five days of access each at another 19 ski resorts, and a combined five days of access at six other ski resorts, all "with no blackout dates." The Ikon Base Pass cost $649 for adults, $499 for young adults, $159 or $259 for children, and $49 for children aged 4 and under.[4]

17.     The individual daily rates for ski and snowboard passes are high, so customers who anticipate skiing or riding a number of days will assess their own needs and purchase the appropriate Pass. Many people take Spring Break ski vacations in March and April. For them, the cost effective way to purchase lift tickets was to purchase one type of Ikon Pass.

18.     Defendants touted the extended length of the ski and snowboard season at their ski resorts as a benefit to prospective purchasers of the Passes. For instance, in an article published on March 6, 2019, Defendants stated that one of their ski resorts, Squaw Valley Alpine Meadows "plans to once again host the longest ski season in Tahoe."[5] That

---

[3] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release.html (last accessed June 8, 2020).
[4] https://www.alterramtnco.com/news/2019/02/26/19-20-ikon-pass-launch-release.html (last accessed June 8, 2020).
[5] https://squawalpine.com/explore/blog/squaw-valley-alpine-meadows-extending-season-july-7 (last accessed June 8, 2020).

article stated that the Squaw Valley ski resort "plans to operate…until July 7 [2019]." In the same paragraph, the article markets that "the 2019-20 Ikon Pass is now on sale" and includes a hyperlink to the ikonpass.com website where customers could purchase the Passes.

19.     Similarly, Defendants' Mammoth Mountain ski resort remained open into June, July, and even August in recent years.

20.     Without giving any prior notification to Plaintiff or Class Members, on March 14, 2020, Defendants initiated the Alterra Closure by abruptly suspending all operations at their ski resorts. In its March 14, 2020 announcement, Alterra Mountain Company's Chief Executive Officer stated that Alterra "will suspend operations at our 15 North American ski resorts, starting the morning of Sunday, March 15, until further notice. All lift operations, food and beverage, retail and rental services will be closed until further notice."[6]

21.     By closing all of their ski resorts effective March 15, 2020, Defendants deprived Plaintiff and Class Members of over one-third of the ski and snowboard season.

22.     As part of the Alterra Closure, Defendants eliminated virtually all employees to greatly reduce their operating costs.

---

[6] https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-company-closure-announcement (last accessed June 8, 2020).

23.    Thus, Defendants have eliminated virtually all of their costs of operating their ski resorts, yet have refused to refund any portion of the costs paid for the Passes by Plaintiff and the Class Members, which Passes were purchased with Defendants' representations they could be used for the full duration of the ski and snowboard season.

24.    Rather than refund the costs paid for the Passes, Defendants have retained 100% of the fees paid by Plaintiff and Class Members for their Passes even after Defendants closed their resorts after only about two-thirds of the ski season had occurred. Defendants have not refunded any portion of such Pass fees. Instead, Defendants have offered to double the "renewal discount" for Passes for the 2020-21 season. Thus, Defendants offered 2019-20 Pass holders a discount of $200 for 2020-21 Ikon Passes (instead of the normal $100 for early purchase) and a discount of $100 for 2020-21 Ikon Base Passes (instead of the normal $50 offered for early purchase).[7] Passes must be purchased prior to May 27, 2020 to receive these prices.

25.    Thus, to get the alleged "benefit" of the $100 discount for the Passes, Plaintiff and the Class Members must spend more money to renew a Pass that they may neither want nor use. Absent spending more money to purchase a 2020-21 Pass, Plaintiff and Class Members receive no "benefit" whatsoever. Meanwhile, during a time of historic economic uncertainty and record unemployment including, on information and belief, Class

---

[7] https://www.alterramtnco.com/news/2020/04/14/ikon-pass-announces-updates-to-20-21-season-passes (last accessed June 8, 2020).

Members, Defendants refuse to refund Plaintiff and Class Members their overpayment for the Passes. Instead, Defendants unlawfully continue to retain the entire purchase price paid by Plaintiff and Class Members for the Passes.

26.     Plaintiff seeks relief in this action individually, and on behalf of all of Defendants' customers nationwide that purchased Ikon Passes or Ikon Base Passes for the 2019-2020 season. Plaintiff seeks relief for himself and all Class Members for Defendants' breach of contract, breach of express warranties, negligent misrepresentation, unjust enrichment, and conversion as well as violations of state consumer protection statutes.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages on behalf of himself and Class Members nationwide:

> All persons in the United States who purchased an Ikon Pass
> or an Ikon Base Pass for the 2019-20 season.

28.     The above-defined class is referred to herein as the "Class."

29.     Excluded from the Class are: a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees; c) persons who properly execute and file a timely request for exclusion from the Class; d) the legal representatives, successors or assigns of any such excluded persons; and e) all persons who have previously

had claims finally adjudicated or who have released their claims against Defendants similar to those alleged herein.

30.     Plaintiff reserves his right to amend the Class definitions if discovery or further investigation reveals that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way

31.     While the exact number and identities of the Class Members are unknown at this time, and can only be ascertained through appropriate discovery, on information and belief, the Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, all Class Members are readily identifiable because Defendants maintain electronic records of all Pass holders' identity and contact information.

32.     Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, whether Defendants breached their contract and/or their warranty with their Pass customers, whether Defendants negligently made misrepresentations, whether Defendants were unjustly enriched, whether Defendants are liable for conversion, and whether Defendants violated certain state consumer protection statutes.

33.     Plaintiff's claims are typical of the claims of all Class Members because such claims arise from the Defendants' wrongful conduct, as alleged above. Plaintiff has no interests that conflict with the interests of the other Class Members.

34.     Questions of law and fact common to all Plaintiff and Class Members predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

35.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in complex commercial litigation and class actions to represent himself and the Class.

36.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

37.     Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims compared to the anticipated costs of the litigation, it is likely that only a few, if any, Class members could afford to seek legal redress for the harms caused by Defendants' actions.

## CLAIMS FOR RELIEF

### COUNT I
### Nationwide Class
### Breach of Contract

38.     Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

39.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

40.     Defendants offered the Passes to Plaintiff and Class Members to provide access, including skiing and riding, to their ski resorts for the entire 2019-20 season in exchange for Plaintiff's and Class Members' payment in full of Pass fees.

41.     Plaintiff and all Class Members accepted Defendants' contractual offer and fully performed and complied with all conditions precedent including full payment to Defendants for the Passes. Defendants received all Pass revenue for the 2019-20 ski and snowboard season prior to the start of the season.

42.     Defendants breached these contracts by retaining Plaintiff's and Class Members' Pass fees while all of their ski resorts remain closed, terminating over one-third of the ski and snowboard season that Defendants contractually promised to Plaintiff and Class Members. Plaintiff and Class Members have suffered an injury through the full payment of Pass fees, without a refund, while not having the contractually promised duration of access to Defendants' North American ski resorts.

11

**COUNT II**
**Nationwide Class**
**Breach of Express Warranty**

43.    Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

44.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

45.    Defendants made an express warranty in connection with their sale of the Passes that customers would have unlimited access to their ski resorts for the 2019-20 ski and snowboard season through, at some resorts, August 2020.

46.    Defendants' affirmation of fact and promise in their marketing, web pages, and signage became part of the basis of the bargain between Defendants and Plaintiff and Class Members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

47.    Plaintiff and all Class Members fully performed and complied with all conditions precedent including full payment to Defendants for the Passes.

48.    Defendants breached their express warranty by failing to provide unlimited access to their ski resorts for the duration of the warranted ski and snowboard season.

49.    Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed;

12

(b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

## COUNT III
### Nationwide Class
### Negligent Misrepresentation

50.     Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

52.     Defendants misrepresented that customers would have unlimited access to their ski resorts for the duration of the represented ski and snowboard season.

53.     Defendants made these representations without knowledge of their truth or veracity.

54.     Defendants negligently misrepresented and/or negligently omitted material facts about their Passes and services that their ski resorts would unconditionally be available for the entire 2019-20 ski and snowboard season through, at some resorts, August 2020.

55.     The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase Defendants' Passes.

56.     As a result of Defendants' misrepresentations, Plaintiff and all Class Members made full payment to Defendants for the Passes before the 2019-20 ski and snowboard season began.

57.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' misrepresentations because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

58.     The negligent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**
**Nationwide Class**
**Unjust Enrichment**

59.     Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

61.     Plaintiff and Class Members conferred benefits on Defendants by paying in advance of the start of the 2019-20 ski and snowboard season and in full for the Passes they purchased from Defendants.

62.     Defendants have knowledge of such benefits and accepted those in full payments knowing the representations they made and services they were to provide in consideration for those payments, namely, unlimited skiing and riding at Defendants' ski resorts for the entirety of the represented 2019-20 season. Defendants developed the Pass program with the specific purpose to obtain nearly 100% of their ski revenues before the 2019-20 ski and snowboard season began.

63.     As a result of the Alterra Closure, Defendants received 100% of the revenues for their Passes sold to Plaintiff and Class Members, but Defendants cancelled over one-third of the ski season depriving Plaintiff and Class Members of benefits for which they paid Defendants in full.

64.     Defendants eliminated the vast majority of their employees and cut other operating costs that they otherwise would have incurred had Defendants kept their North America ski resorts open for the full 2019-20 ski and snowboard season, as they represented. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' Pass fees, while eliminating the costs for the services purchased by Plaintiff and Class Members with those Pass fees. Retention of those moneys

15

under these circumstances is unfair, unjust and inequitable because Defendants are retaining their customers' full Pass fees while all of their ski resorts remain closed.

65.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unfair, unjust, and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Nationwide Class**
**Conversion**

66.     Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

68.     Plaintiff and members of the Class had a right to a refund of their Pass fees once all of Defendants' ski resorts were and remain closed. Defendants intentionally retained the full amount of the Plaintiff's and Class Members' Pass fees while Defendants' ski resorts were closed. Plaintiff and Class Members did not consent to Defendants' retaining such fees while Defendants' ski resorts are closed.

69.     Plaintiff and Class Members were harmed through Defendants' retention and conversion of their Pass fees for Defendants' own benefit; and Defendants' conduct was a substantial factor in causing Plaintiff and Class Members' harm

16

**COUNT VI**
**Nationwide Class**
**Violation of Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101, *et seq*.**

70.     Plaintiff hereby repeats and realleges the foregoing paragraphs, as if fully alleged herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants or, alternatively, a Colorado Subclass.

72.     Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

73.     Plaintiff and Class Members, as well as the general public, are actual  or potential consumers of the products and services offered by Defendants or successors in interest to  actual consumers.

74.     Defendants engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to, by advertising nationwide that purchasers of their Passes have unlimited, unrestricted skiing and snowboarding at Defendants' North America ski resorts for the entire duration of the represented 2019-20 ski season through, at some resorts, August 2020.

75.     By engaging in deceptive trade practices in the course of their business and vocation,  directly or indirectly affecting the people of Colorado and all other states where Passes were sold,  Defendants  violated Colo. Rev. Stat. § 6-1-105(g)  by  representing that goods and services are of a particular standard or quality when they knew or should have known that they are of another.

76.     In particular, Defendants represented that the purchasers of the Passes would obtain "unlimited access" at their North America ski resorts for duration of the entire ski season through, at some resorts, August 2020, when in fact Defendants knew or should known that in the event that they closed all of their North America ski resorts before the end of the ski season they would retain 100% of the price paid to Defendants for the Passes.

77.     Defendants' representations and omissions were material because they were likely to  deceive reasonable consumers if Defendants failed to keep their ski resorts open for the duration of the ski and snowboard season as represented and promised.

78.     Plaintiff and the Class Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

79.     Defendants' actions violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights by accepting Plaintiff's and Class Members' payments in full for the Passes, which were represented to allow Pass holders the ability to ski and ride for the entire 2019-20 season, through, at some resorts, August 2020, but by prematurely closing their resorts and refusing to refund the fees paid by Plaintiff and Class Members.

80.     As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Class Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent

Defendants' representations and omission of a warning that they would retain 100% of Class Members' Pass holder fees while all their ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

81.     Defendants' deceptive trade practices significantly impact the public because Defendants own and operate at least 15 North American ski resorts, market the Passes as providing access to "38 global winter destinations," and, on information and belief, sell a large number of ski passes to consumers located in Colorado and every other state.

82.     Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including the greater of their: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a)      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class Members;

b)      For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c)      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d)      For compensatory damages in an amount to be determined by the Court and/or jury;

e)      For prejudgment interest on all amounts awarded;

f)      For an order of restitution and all other forms of equitable monetary relief;

g)      For injunctive relief as pleaded or as the Court may deem proper; and

h)      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:    June 10, 2020          */s/ Daniel E. Gustafson*
Daniel E. Gustafson (MN #202241)
Daniel C. Hedlund (MN #258337)
*Not admitted in District of Colorado*
Joshua J. Rissman (MN #391500)
*Not admitted in District of Colorado*
Mickey L. Stevens (MN #398549)
*Not admitted in District of Colorado*
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844

dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
mstevens@gustafsongluek.com

***Attorneys for Plaintiff Matt Simpson and the
Proposed Class***